IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEREMY GORDON,

    Plaintiff,

  v.

MODEL N, INC.,

    Defendant.

No. C 15-01423 WHA

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this individual wage-and-hour action alleging misclassification of overtime exempt status, both sides move for summary judgment. For the reasons stated below and to the extent stated below, defendant's motion for summary judgment is **DENIED**, and plaintiff's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Defendant Model N, Inc., supplied revenue management software solutions that tracked invoices, rebates, and charge-backs to clients in the life sciences and technology industry. From March 2013 through January 2015, plaintiff Jeremy Gordon worked as the principal technical education consultant for Model N.

Model N's software was built on numerous software platforms for database management and reporting. After Model N sold its software to customers it sent a team to set up the software at the client's work site, and Gordon later went to the work site to set up a training environment and to teach customers how to use Model N's software to best suit their needs.

Gordon's primary responsibilities included developing, preparing, and delivering training to customers and employees regarding Model N's software systems. In order to provide an effective hands-on experience for trainees, Gordon used "classroom images and environments," which were virtual simulations of multi-computer systems that Gordon built from previously-developed base virtual environments and the teaching materials in his training classes. Gordon's responsibilities included updating the training materials to correct inaccuracies and add practice exercises, as well as re-building virtual environments with new software releases.

Gordon's responsibilities also included tweaking aspects of the training materials and virtual environments to account for idiosyncrasies of Model N's customers and their respective configurations of the software. These tweaks occurred both in advance and "on the fly." Although some tweaks involved simply identifying which pre-made training modules to use based on a given client's software configuration, Gordon had autonomy to select the best hypothetical scenarios to use in his training sessions in order to convey best practices based on the client's idiosyncrasies (Gordon Dep. at 30–31, 36, 40, 45, 85–86, 101–02; Simon Dep. at 20–21, 59–60).

Gordon had discretion in managing his own work hours and the manner of his preparation for each training class (Gordon Dep. at 56; Simon Dep. at 30–31). Gordon also exceeded the scope of his primary duties to spearhead projects such as an instructor's guide, a department-wide online database of knowledge relating to training, and a style guide to standardize training materials (Gordon Dep. at 72–73, 76)

At all relevant times, Gordon's annual salary exceeded one hundred thousand dollars. Although Model N paid Gordon's salary without regard to hours worked, it required him to track his billable hours in order to bill clients as well as his non-billable hours in order to monitor productivity.

Gordon commenced this action on behalf of himself only (not on behalf of a putative class) in March 2015, alleging that Model N improperly classified him as exempt from overtime pay, seeking overtime wages under California and federal law accordingly. He also seeks

2

waiting time penalties based on Model N's failure to pay overtime wages after he was terminated. He also claims he is entitled to penalties based on Model N's improper wage statements, although that claim is not at issue on the instant motions for summary judgment. This order follows full briefing and oral argument.

**ANALYSIS**

**1. STATE LAW CLAIMS.**

Section 510 of the California Labor Code requires employers to pay overtime to employees for any work over eight hours in one work day or forty hours in one work week. Pursuant to Section 515(a), however, that requirement is subject to exemptions set forth by the California Industrial Welfare Commission.

Model N contends Gordon was covered by the "administrative" exemption under California law. 8 Cal. Code Regs. § 11040(A)(2). That exemption provides, in pertinent part:

> A person employed in an administrative capacity means any employee:
>
> (a) Whose duties and responsibilities involve . . .
>
> > (I) The performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his employer's customers;
>
> \*\*\*
>
> (b) Who customarily and regularly exercises discretion and independent judgment; and
>
> \*\*\*
>
> (d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge;
>
> \*\*\*
>
> and
>
> (f) Who is primarily engaged in duties that meet the test of the exemption.
>
> \*\*\*
>
> (g) Such employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time

3

employment. Full-time employment is defined in California Labor Code Section 515(c) as 40 hours per week.

All agree that Gordon's annual salary satisfied the limit of paragraph (g), and Gordon does not dispute Model N's contention that his job duties satisfied paragraph (d). Thus, the only questions that need be addressed on this motion are whether Gordon's work constituted administrative work under paragraph (a)(I), whether he exercised discretion under paragraph (b), and whether Gordon was "primarily" engaged in work meeting the requirements of the exemption. This order addresses only paragraph (a)(I), inasmuch as the analysis thereunder is dispositive.

Model N contends that Gordon's work constituted "non-manual work directly related to . . . general business operations of his . . . employer or his employer's customers." 8 Cal. Code Regs. § 11040(A)(2)(a)(I). Specifically, it notes that Section 541.201(a) of Title 29 of the Code of Federal Regulations (incorporated into California law under paragraph (f) of the administrative regulation), provides that work directly related to general business operations includes "running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."

In *Harris v. Superior Court*, 53 Cal. 4th 170, 181 (2011), the California Supreme Court held (citing 29 C.F.R. 541.205(a)) (emphasis in original):

> Work qualifies as "directly related" if it satisfies two components. First, it must be *qualitatively* administrative. Second, *quantitatively*, it must be of substantial importance to the management or operations of the business. Both components must be satisfied before work can be considered "directly related" to management policies or general business operations in order to meet the test of the exemption.

*Harris* further explained that qualitatively administrative operations "include work done by 'white collar' employees engaged in servicing a business," which could include "advising management, planning, negotiating, and representing the company." *Id.* at 182. It further held that the quantitative component considers whether the work is of "substantial importance." *Ibid.*

Model N contends that Gordon's primary focus was servicing Model N by training its customers, in turn enabling Model N to provide the solutions its customers needed, and that as a

4

1 trainer, he represented the company to its customers. Moreover, Gordon's responsibility for
2 ensuring that Model N's customers understood how best to use their implementation of Model
3 N's software affected the customers' own revenue tracking and reporting abilities. Model N
4 further contends Gordon's work was of substantial importance because his ability to train
5 customers directly affected Model N's primary source of revenue.

Gordon responds that *Eicher v. Advanced Business Integrators, Inc.*, 151 Cal. App. 4th 1363 (2007), forecloses Model N's decision. That decision noted:

> Federal and California authorities draw a distinction between administrative employees, who are usually described as employees performing work 'directly related to management policies or general business operations of his employer or his employer's customers, and production employees, who have been described as those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce. Employees engaged in an activity that constitutes the company's primary purpose are likely production workers.

*Id.* at 1372–73 (citations omitted). There, the plaintiff's duties related to the core "day-to-day business of [the defendant]." *Id.* at 1373. Those duties entailed:

> [I]mplementing the [defendant's] product at customer venues and supporting the customers, whether at the customer venues or in the [defendant's] office. While he was required to learn of the customers' management policies and business operations in the course of his work, in order to ensure that the product met the needs of the customers, he did so only to implement the software in the most beneficial way for the customers and not to participate in policy-making or alter the general operation of the business. [plaintiff's] service in implementing the software merely automated processes the customer had previously handled manually.

Here, although Gordon never worked in the production of Model N's software, he *did* work in the production of an ancillary product — the training materials. To the extent he modified the training materials at his own discretion, he did so based on the already-established needs of the customers, not based on any responsibility in crafting Model N's or its client's business strategy. To the extent his primary work enhanced revenues, that was due to his role as a conduit for information that promoted use of Model N's software, not as an employee focused on the *general* business operations.

5

Model N's attempt to distinguish *Eicher* is unavailing. Rather than engage with the actual analysis in *Eicher*, Model N simply argues that the training duties of the plaintiff therein did not constitute the majority of his work. Although Model N is correct on that particular fact, *Eicher* never addressed whether conducting training sessions could constitute administrative work. Instead, that decision's overall approach to the question suggests that Gordon's work contributed to a service that was ancillary to Model N's bread and butter products, but he never participated in "policy-making or alter[ing] the general operation of the business." *Ibid.*

Gordon cites *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1128 (9th Cir. 2002), for a similar proposition. There, our court of appeals held that a dispute of fact as to the true scope of the plaintiff's job duties precluded the district court's finding of summary judgment. Although the defendant's evidence suggested that he managed accounts, developed warranty policies, and advised the production department at a robotics testing company, which would constitute non-exempt work, the plaintiff contended he was simply a repairman who was seconded out to a specific customer's facility for a period of time. The plaintiff's version of his job duties, *Bothell* held, did not warrant the administrative exemption because he "did not engage in running the business itself or determining its overall course or policies." *Ibid.*

Model N again attempts to distinguish *Bothell* on its facts without engaging with its analysis. Model N argues that Gordon was not a repairman, so *Bothell* is inapplicable, but *Bothell* plainly contemplated that other positions would not constitute administrative work particularly because they did not involve directing the general operations of the business.

Although Gordon's work related to the heart of Model N's business, and the service he provided was essential to its success, his role in that work did not relate to the general operations of the business. Instead, he provided training that enabled customers to use the product sold by Model N and helped customers automate their revenue tracking. Model N has failed to overcome Gordon's showing that his job duties simply do not fall within the administrative exemption. Thus, Gordon is entitled to summary judgment on his claim for unpaid overtime wages.

6

### 2. DAMAGES.

Gordon offers a summary of damages pursuant to FRE 1006, totaling $33,656.88. Gordon's summary chart is based on Model N's time records, which it required Gordon to keep for both billable and non-billable hours (Tracy Decl., Exh. F). Model N does not challenge Gordon's claim for $33,656.88 in unpaid overtime if liability is found. Summary judgment is therefore appropriate as to the amount of damages for Gordon's claim for overtime wages.

Gordon also contends he is entitled to additional penalties of $13,096.80 under Section 203 of the California Labor Code which provides for penalties if an employer "willfully fails to pay" wages due to an employee after the employee is discharged. In this context, willfulness refers to an "intentional[] fail[ure] or refus[al] to perform an act which was required to be done." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008). "A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Ibid.*

Gordon's only proffered evidence that Model N intentionally failed to pay overtime wages is its apparent "lack of any cognizable legal theory" in this action. Although this order finds Gordon is entitled to summary judgment on his overtime claim, it does not find that Model N's positions in this suit were so meritless as to establish, as a matter of law, that it had no good faith dispute that Gordon was exempt. Accordingly, summary judgment in favor of Gordon is not appropriate as to the waiting time penalty claim.

### 3. OTHER CLAIMS.

Under the FLSA, an employee with total annual compensation of at least one hundred thousand dollars is deemed exempt "if the employee customarily and regularly performs" one or more of the exempt duties or responsibilities set forth in the regulations. 29 C.F.R. 541.601(a). "A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." 29 C.F.R. 541.601(c). Here, although Gordon is highly compensated, the foregoing analysis demonstrates

that his work did not satisfy the administrative exemption under California law (which mirrors the federal exemption). Thus, Model N is not entitled to summary judgment on that claim.

Gordon, however, did *not* seek summary judgment on his FLSA claim. Thus, this order only denies Model N's motion as to the FLSA claims. It does not grant summary judgment for Gordon on his FLSA claims.

Gordon offered to dismiss his FLSA claim as well as his claim for improper wage statements (not raised in either party's motion) so as to expedite the entry of judgment. The Court will entertain a motion to voluntarily dismiss those claims (as well as the waiting time penalty claim); however, it will not dismiss those claims based solely on Gordon's statement in his motion, inasmuch as this order only grants part of the relief he sought with his motion.

Any such motion must be filed by **MONDAY, JUNE 13 AT NOON**.

## CONCLUSION

To the extent stated above, Gordon's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, and Model N's motion for summary judgment is **DENIED**. Gordon offered to dismiss all outstanding claims in order to expedite entry of judgment. Inasmuch as several claims, including Gordon's waiting time penalty claim, remain unresolved, judgment will not issue following this order.

For now, all hearings and deadlines, including the pretrial conference, remain in place.

**IT IS SO ORDERED.**

Dated: June 9, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE